J-S17032-26

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : IN THE SUPERIOR COURT OF |
| | : PENNSYLVANIA |
| | : |
| v. | : |
| | : |
| | : |
| | : |
| JAMES SUBER | : |
| | : |
| Appellant | : No. 2979 EDA 2025 |

Appeal from the Judgment of Sentence Entered October 17, 2025
In the Court of Common Pleas of Montgomery County Criminal Division
at No(s):  CP-46-CR-0005521-2024

BEFORE:   PANELLA, P.J.E., STABILE, J., and FORD ELLIOTT, P.J.E.[*]

MEMORANDUM BY FORD ELLIOTT, P.J.E.:           **FILED JULY 17, 2026**

James Suber appeals from the judgment of sentence, entered in the Court of Common Pleas of Montgomery County, after he pleaded guilty to one count each of aggravated assault, false imprisonment, and sexual assault.[1] Suber contends that the evidence was insufficient to support the court's determination that he was a sexually violent predator ("SVP"). We affirm.

On September 10, 2024, James Suber got into an argument with the victim at the victim's apartment in Montgomery County. **See** N.T. Plea Hearing, 5/16/25, at 12-13. Suber admitted to punching, head-butting, and strangling the victim. **See id.** at 13. Suber further admitted to putting his penis into the victim's mouth without her consent. **See id.** at 14. After the

_____

[*] Retired Senior Judge assigned to the Superior Court.

[1] 18 Pa.C.S. §§ 2702(a)(1), 2903(a), and 3124.1, respectively.

assault, Suber prevented the victim from leaving her apartment for 36 hours. *See id.* at 16. Suber concedes that his assault risked the victim's death or serious bodily injury. *See id.* at 13.

On May 16, 2025, Suber entered into a plea agreement in which he pleaded guilty to the above listed charges.[2] *See id.* at 12-15. On October 17, 2025, the court held a hearing to determine whether Suber was an SVP wherein the Commonwealth presented the live testimony of Michael Lavetsky, a member of the Sexual Offenders Assessment Board ("SOAB"). *See* N.T. SVP Hearing, 10/17/25, at 5. Following the hearing, the court made a finding that Suber was an SVP. *See id.* at 69. On the same day, the court sentenced Suber to an aggregate term of 51 to 102 months of incarceration, followed by 3 years of probation.[3] *See id.* at 75. Suber filed a timely appeal on November

---

[2] The court explained that an open plea was entered solely for the purpose of having an SVP assessment completed. Otherwise, there was an agreement between Suber and the Commonwealth. *See* N.T. Plea Hearing, 5/16/25, at 16. In exchange for the plea, the Commonwealth agreed to recommend the aggregate imprisonment term that was ultimately imposed, *see id.* at 3-4, and to *nolle prosse* additional charges, *see id.* at 10, 16; Trial/Plea/Sentence Form, 1. The *nolle prossed* charges included: strangulation (18 Pa.C.S. § 2718(a)(1)); terroristic threats (18 Pa.C.S. § 2706(a)(1)); simple assault (18 Pa.C.S. § 2701(a)); rape by forcible compulsion (18 Pa.C.S. § 3121(a)(1)); indecent assault without consent of other (18 Pa.C.S. § 3126(a)(1)); and indecent assault by forcible compulsion (18 Pa.C.S. § 3126(a)(2)). *See* Bills of Information, 5/16/25, 1-2. As part of the agreement, Suber also agreed to have no further contact with his victim. *See* N.T. Plea Hearing, 5/16/25, 4-5.

[3] Specifically, the court imposed three individual sentences, all to run concurrently: 51 to 102 months of incarceration followed by 3 years of probation, 51 to 102 months of incarceration, and 6 to 12 months of incarceration. *See* N.T. SVP Hearing, 10/17/25, at 75. Appellant was subject

*(Footnote Continued Next Page)*

14, 2025. Suber and the trial court have complied with Pennsylvania Rule of Appellate Procedure 1925.

On appeal, Suber argues that the trial court erred in finding that Suber was an SVP. **See** Appellant's Brief, at 14. Specifically, Suber contends that the Commonwealth failed to prove by clear and convincing evidence that Suber met the criteria for an SVP designation. **See id.**

After summarizing the SVP designation process, Suber sets forth the principle that the Commonwealth must prove by clear and convincing evidence that an SVP designation is appropriate. **See id.** at 14-15. Suber argues that, for an SVP determination, it is insufficient that a person be convicted of a sexually violent offense and merely have a mental abnormality. **See id.**; **Commonwealth v. Feucht**, 955 A.2d 377, 381 (Pa. Super. 2008). Instead, Suber relies on **Feucht** for the rule that the mental abnormality must be one that makes the person particularly likely to engage in sexually violent offenses. **See** Appellant's Brief, at 16.

With respect to the statutory factors, Suber notes that this case does not involve the victimization of a minor, multiple victims, or pedophilia. **See id.** Moreover, Suber points out that his lengthy criminal history does not

_____

to the three-year probation term because his sexual assault conviction qualified as a Tier III sexual offense under 42 Pa.C.S. § 9799.14(d). **See** 42 Pa.C.S. § 9718.5(a) ("A person who is convicted in a court of this Commonwealth of an offense under section 9799.14(d) … shall be sentenced to a mandatory period of probation of three years consecutive to and in addition to any other lawful sentence issued by the court.").

include any sexual offenses and, as such, is not reasonably related to the risk of "sexual reoffending." *Id.* Suber finally argues that his conduct was not directed at a stranger or a person for which the relationship was established for the purpose of victimization. *See id.* at 17. Suber instead characterizes the incident as an "aberration" from the relationship between himself and the victim. *Id.* As such, he concludes that "there was insufficient clear and convincing evidence that [he] presented a likelihood of future predatory sexually violent conduct." *Id.*

Our standard of review with respect to a challenge to the trial court's determination of SVP status is to determine "whether the Commonwealth presented clear and convincing evidence[4] that the defendant meets the statutory definition of an SVP." *Commonwealth v. Lawrence*, 313 A.3d 265, 280 (Pa. Super. 2024) (citing *Commonwealth v. Hollingshead*, 111 A.3d 186, 189 (Pa. Super. 2015)). As with any sufficiency of the evidence claim, we view all evidence and reasonable inferences in the light most favorable to the Commonwealth as the verdict winner. *See id.*

---

[4] The Pennsylvania Supreme Court has explained that the "clear and convincing evidence" standard of proof is "more exacting than a preponderance of the evidence test, but less exacting than proof beyond a reasonable doubt." *Commonwealth v. Meals*, 912 A.2d 213 (Pa. 2006). The evidence must be so clear and convincing as to enable the trier of fact to come to a clear conviction of the truth of the precise facts in issue. *See id.*

Under Pennsylvania law, an SVP is defined as an individual who was convicted of a sexually violent offense[5] and has a "mental abnormality or personality disorder that makes the individual likely to engage in predatory sexually violent offenses." 42 Pa.C.S. § 9799.12. A "mental abnormality" is "[a] congenital or acquired condition of a person that affects the emotional or volitional capacity of the person in a manner that predisposes that person to the commission of criminal sexual acts to a degree that makes the person a menace to the health and safety of other persons." *Id.* A "predatory" offense is defined as an "act directed at a stranger or at a person with whom a relationship has been initiated, established, maintained or promoted, in whole or in part, in order to facilitate or support victimization." *Id.*

Following conviction, but before sentencing, the court "shall order an individual convicted of a sexually violent offense to be assessed by the [SOAB]." 42 Pa.C.S. § 9799.24(a). In assessing whether an individual should be classified as a sexually violent predator, the SOAB examines the following the factors:

(1) Facts of the current offense, including:

---

[5] For the purposes of an SVP determination, it is sufficient that the individual has "committed a sexually violent offense under the laws of this Commonwealth or an attempt, conspiracy, or solicitation to commit a sexually violent offense under the laws of this Commonwealth on or after December 20, 2012." 42 Pa.C.S. § 9799.12. Suber does not dispute that his sexual assault conviction constitutes a sexually violent offense for the purposes of the SVP determination. *See* Trial Court Opinion, 1/5/26, at 3, n.6.

(i) Whether the offense involved multiple victims.

(ii) Whether the individual exceeded the means necessary to achieve the offense.

(iii) The nature of the sexual contact with the victim.

(iv) Relationship of the individual to the victim.

(v) Age of the victim.

(vi) Whether the offense included a display of unusual cruelty by the individual during the commission of the crime.

(vii) The mental capacity of the victim.

(2) Prior offense history, including:

(i) The individual's prior criminal record.

(ii) Whether the individual completed any prior sentences.

(iii) Whether the individual participated in available programs for sexual offenders.

(3) Characteristics of the individual, including:

(i) Age.

(ii) Use of illegal drugs.

(iii) Any mental illness, mental disability or mental abnormality.

(iv) Behavioral characteristics that contribute to the individual's conduct.

(4) Factors that are supported in a sexual offender assessment field as criteria reasonably related to the risk of reoffense.

42 Pa.C.S. § 9799.24(b)(1)-(4).

Importantly, the statute does not impose a requirement that all or any particular number of factors are present in order to support an SVP designation. *See Feucht*, 955 A.2d at 381. The statutory factors are "not a check list with each one weighing in some necessary fashion for or against

SVP designation." ***Commonwealth v. Person***, 325 A.3d 823, 842 (Pa. Super. 2024) (citation and internal quotation marks omitted). While the SOAB must examine all of the factors in its assessment of an individual, the Commonwealth need not show that any certain factor is present or absent. ***See Commonwealth v. Brooks***, 7 A.3d 852, 863 (Pa. Super. 2010). The final determination as to an SVP designation is to be made by the SVP court after having conducted a hearing and considered the evidence. ***See id.***

At the SVP hearing, the Commonwealth presented the testimony of Michael Lavetsky, a member of the SOAB and licensed professional counselor. ***See*** N.T. SVP Hearing, 10/17/25, at 4-8. The court admitted Mr. Lavetsky as an expert in evaluating sexually violent predators. ***See id.*** at 8-10. Instantly, the trial court accurately summarized the testimony of Mr. Lavetsky as follows:

> With respect to [the statutory factors], Mr. Lavetsky cited to the report he prepared and testified that the current offense involved one victim, and [Suber] exceeded the means necessary to achieve the offense when he choked and physically assaulted the victim in addition to not allowing her to leave the residence following the incident. Mr. Lavetsky detailed that the nature of the sexual contact with the victim involved physical assault in the form of dragging her on the ground, pulling her hair, punching her, choking her[,] and forcing her to perform oral sex. Mr. Lavetsky noted that the relationship between [Suber] and the victim could qualify as some type of romantic relationship but [Suber] had indicated that he was just using the victim "for shelter and sex." Mr. Lavetsky stated that the victim was approximately fifty-four years old at the time of the offense and there was a display of an unusual amount of cruelty by [Suber] during the commission of the offense in the form of choking and punching the victim, dragging her by the hair[,] and not allowing her to leave the residence.

Mr. Lavetsky referenced that [Suber's] prior criminal history included three arrests as a juvenile and twelve arrests as an adult, seven of which resulted in convictions. This history included assaultive behavior in addition to forgery, disorderly conduct, and harassment. [. . .] Mr. Lavetsky further detailed that [Suber] had a prior history of drug use, including the use of marijuana and cocaine on a regular basis in addition to experimentation with synthetic marijuana and amphetamines. [Suber] also indicated he was under the influence of alcohol and drugs when he committed the offense.

Mr. Lavetsky determined that [Suber] met the criteria for antisocial personality disorder, which is a lifetime condition that predisposes someone to engaging in future sexual violence. Mr. Lavetsky referenced how [Suber's] behavior [. . .] indicated a pattern of chronic anti-social behavior[,] which included the use of violence and intimidation towards others and deceitfulness in the form of repeated lying. Mr. Lavetsky also highlighted how [Suber] consistently demonstrated a reckless disregard for the safety of others including a [driving under the influence] conviction in which [Suber] crashed his car and fled the scene. Mr. Lavetsky stated how [Suber] has failed to show any remorse for his conduct and has instead engaged in characterizations which minimize the harm caused by his actions. Specifically, [Suber] laughed when the victim informed him of the pain caused by their sexual intercourse, and stated[, "W]e're still going to have sex and you're going to give it to me when I want it."

Mr. Lavetsky mentioned that[,] although this was [Suber's] first sexual offense, his likelihood of reoffending is substantially increased due to his antisocial personality disorder and the related lack of empathy and lack of remorse. Mr. Lavetsky confirmed that[,] although [Suber] doesn't possess a paraphilic disorder, his actions in addition to his own words demonstrate a pattern of physical and sexual violence against women. Mr. Lavetsky testified that the nature of [Suber's] actions indicated predatory behavior, considering it was directed at a person with whom a relationship had been initiated, established, maintained or promoted, in whole or in part, to facilitate or support victimization. Specifically, Mr. Lavetsky referenced how [Suber] moved into the victim's residence for shelter and sex and stated how they were going to continue to engage in sexual intercourse even though she was in pain because she was "supposed to give him sex." Mr. Lavetsky also noted how [Suber] did not allow the victim to leave the residence for thirty-six hours following his sexual assault. Mr.

> Lavetsky concluded that these elements proved [Suber's] act wasn't a one-time impulsive event and was instead predatory in nature.
>
> The court found Mr. Lavetsky's testimony to be credible. Additionally, his testimony was not rebutted by any expert testimony offered by [Suber] [. . .].

Trial Court Opinion, 1/5/26, at 5-7 (internal citations, internal quotation marks, numeral notations, and footnote omitted).

Upon review, we find that, when viewed in the light most favorable to the Commonwealth, the evidence presented, and credited by the court, showed that Suber meets the criteria for antisocial personality disorder, which makes him likely to engage in future predatory sexually violent offenses. ***See Lawrence***, 313 A.3d at 280; N.T. SVP Hearing, 10/17/25, at 30-35; ***see also*** 42 Pa.C.S. § 9799.12. Therefore, we conclude that the evidence was sufficient for the court to determine that Suber met the criteria for an SVP designation. ***See Commonwealth v. Fuentes***, 991 A.2d 935, 943 (Pa. Super. 2010) (*en banc*) (concluding Commonwealth presented sufficient evidence to support SVP determination where expert testified to Appellant's antisocial personality disorder); N.T. SVP Hearing, 10/17/25, at 68-69. Contrary to Suber's claim, upon our review of an SVP determination, "it is not this Court's role to reweigh the evidence." ***Commonwealth v. Woeber***, 174 A.3d 1096, 1106 (Pa. Super. 2017). Accordingly, we affirm Suber's judgment of sentence.

Judgment of sentence affirmed.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

Date: 7/17/2026